Submitted February 28, reversed July 26, 2017

In the Matter of T. Z.,
a Person Alleged to have a Mental Illness.
STATE OF OREGON,
*Respondent,*

*v.*

T. Z.,
*Appellant.*

Marion County Circuit Court
15CC02212; A161993

401 P3d 1265

Joseph DeBin and Multnomah Defenders, Inc., filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Inge D. Wells, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Wollheim, Senior Judge.

## ORTEGA, P. J.

In this civil commitment case, appellant challenges a trial court order that continued her commitment under ORS 426.301 and ORS 426.303 (providing for further commitment and a hearing if the continued commitment is contested) on the basis that she is still a person with a mental illness under the expanded criteria defining mental illness, ORS 426.005(1)(f)(C) (including persons with a chronic mental illness, *see* 287 Or App at 12-13), and requires further treatment. In appellant's view, that determination lacked clear and convincing evidence. Appellant also assigns error to the trial court's determination that she was a danger to herself, ORS 426.005(1)(f)(A). The state concedes that the record was insufficient to support that determination, and we accept the state's concession. As for the expanded criteria determination, we view the record in the light most favorable to the trial court's determination and review the evidence, as supplemented and buttressed by permissible derivative inferences, to assess whether, when so viewed, the record was legally sufficient to permit a rational factfinder to reach that same outcome. *See State v. M. A.*, 276 Or App 624, 625, 371 P3d 495 (2016) (citing *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013)). Under that standard, we reverse.[1]

Appellant, 40 years old at the time of her recommitment hearing in April 2016, suffers from schizoaffective disorder, which means that appellant's perceptions of her environment are distorted (she hears people saying things that are not said and sees things that are not there) and she has dramatic swings in mood, from euphoria to striking out at individuals when angered. Appellant's disorder has progressively worsened since she was at least 16, when she was involved in a car accident that resulted in a traumatic brain injury and a coma. In addition to her disorder and memory problems, appellant experienced significant pain after breaking her ankle two months before the recommitment hearing, and she also has chronic pain in her left arm due

---

[1] The parties have not requested that we review the case *de novo*, and we conclude that this is not an exceptional case warranting such review. *See* ORAP 5.40(8)(c)(the court will exercise its discretion to review *de novo* "only in exceptional cases").

to an injury to nerves in her neck and shoulder. The chronic pain has led to addictions to opiate medications and heroin use.

For appellant's disorder, she received a daily dose of 30 milligrams of Haldol, an antipsychotic medication. She believed, however, that she did not have a mental illness, that all of her problems stemmed from her chronic pain issues, and that she consequently needed only opiate medication. In an unsupervised setting, appellant would stop taking the Haldol or decrease the dosage because she believed that she did not need it and because she would forget to take it due to her memory problems. Whenever she stopped taking Haldol, appellant would decompensate; her delusions and hallucinations worsened.

Appellant had been hospitalized several times in the three years before her recommitment hearing, including a hospitalization at Oregon State Hospital (OSH) that began in March 2015 and continued until the time of her recommitment hearing. However, the record contains little or no information about appellant's other hospitalizations. The March 2015 OSH hospitalization occurred because, during a trial visit to a residential treatment facility, she had "become aggressive, tried to attack the staff, and tried to break down the windows" of the office in which the staff had sequestered themselves. On December 1, 2015, appellant had a verbal altercation with another female patient at OSH and hit her with a coat. And, on December 22, 2015, appellant struck and hit a hospital staff member in the stomach as the staff member was holding her down on the toilet. During the latter two incidents, hospital staff members were able to redirect appellant.

In February 2016, an interdisciplinary treatment team met and put appellant on "ready to place" status—that is, the team determined that appellant was eligible to be discharged from the hospital to a community placement. Later that same month, appellant broke her ankle, which resulted in her becoming more psychotic, irritable, and verbally argumentative and aggressive. Her doctors adjusted her medication to treat her pain from the ankle injury, and revoked her ready-to-place status. Her treating psychiatrist,

Dr. McCullars, clarified at the recommitment hearing, however, that appellant's status was not revoked because she had exhibited any recent violent or dangerous behavior or posed a substantial risk to others. Indeed, McCullars testified that she had not seen any symptoms of violence in the 30 days preceding the recommitment hearing and, when pressed by appellant's counsel, acknowledged that appellant had not exhibited "any sort of violent acts" since the December 22, 2015, incident.

McCullars believed that appellant was not ready to be discharged from the hospital because her doctors were trying to control her pain and determine if her pain issues were driving the psychosis. She admitted that appellant was currently asymptomatic of "aggressive" psychosis and was doing much better but still had concerns about appellant's memory and a baseline psychosis. Moreover, if appellant failed to take her antipsychotic medication, McCullars believed that she was in danger of decompensating and "strik[ing] out at imaginary perceptions and hurt[ing] other people." In McCullars's view, appellant "needs supervision for the rest of her life in terms of medication management and ensuring that she does not put herself in harm's way."

As to the trial court's basis for recommitting appellant because her condition satisfied the expanded criteria, the court concluded:

> "With regards to the expanded criteria * * *, [w]e have a number of commitments from 2014, 2015. The testimony is that there is at least one, probably two, from the doctor, from Dr. McCullars, without a specific date as to that. And there is nothing to contradict that statement. So I will find that [appellant] is chronically mentally ill as defined by statute. That she is over 18 years of age."

The court did not make express findings for two of the expanded criteria, ORS 426.005(1)(f)(C)(iii), (iv). *See* 287 Or App at 12-13. The court also found that appellant's mental disorder did not interfere with her ability to meet her basic personal needs, ORS 426.005(1)(f)(B), and did not make her dangerous to others, ORS 426.005(1)(f)(A). Although the court determined that appellant was a danger to herself,

ORS 426.005(1)(f)(A), the state concedes that that determination was in error.

This appeal puts at issue two areas of the civil commitment laws that we have addressed infrequently. One is the continued civil commitment provisions, ORS 426.301, ORS 426.303, and ORS 426.307. Under those provisions, a committed person must be released at the end of a 180-day period of commitment unless they voluntarily submit to a further period of commitment or the Oregon Health Authority certifies to the court "that the person is still a person with mental illness and is in need of further treatment." ORS 426.301(1). That certification must be provided to the committed person, and the person can protest the further period of commitment, which entitles the person to a hearing. ORS 426.301(2), (3). If no protest is made, the commitment is continued for an additional period of time up to 180 days. ORS 426.301(3)(c). If a protest is made and a recommitment hearing is held, the court must determine that "the individual is still a person with mental illness by clear and convincing evidence and is in need of further treatment" in order to further commit the person for an additional indefinite period of time up to 180 days. ORS 426.307(6).

The second area that we must address is the expanded criteria in the definition of a "person with mental illness" under ORS 426.005(1)(f)(C). Specifically, a "[p]erson with a mental illness" includes a person who, because of a mental disorder, is a person

"(i) [w]ith a chronic mental illness, as defined in ORS 426.495;[2]

"(ii) [w]ho, within the previous three years, has twice been placed in a hospital or approved inpatient facility

---

[2] ORS 426.495(1)(c) provides:

"'Person with a chronic mental illness' means an individual who is:

"(A) Eighteen years of age or older; and

"(B) Diagnosed by a psychiatrist, a licensed clinical psychologist, a licensed independent practitioner as defined in ORS 426.005 or a nonmedical examiner certified by the Oregon Health Authority or the Department of Human Services as having chronic schizophrenia, a chronic major affective disorder, a chronic paranoid disorder or another chronic psychotic mental disorder other than those caused by substance abuse."

by the authority or the Department of Human Services under ORS 426.060;

"(iii) [w]ho is exhibiting symptoms or behavior substantially similar to those that preceded and led to one or more of the hospitalizations or inpatient placements referred to in sub-subparagraph (ii) of this subparagraph; and

"(iv) [w]ho, unless treated, will continue, to a reasonable medical probability, to physically or mentally deteriorate so that the person will become a person described under either subparagraph (A) or (B) of this paragraph or both."

ORS 426.005(1)(f)(C). All four criteria must be met and, in this case, appellant asserts that none of them was. We conclude that the record was legally insufficient for the court to find under ORS 426.005(1)(f)(C)(iii) that, at the time of the recommitment hearing, appellant was "exhibiting symptoms or behavior substantially similar to those that preceded and led to" to her March 2015 hospitalization at OSH.

In appellant's view, McCullars's testimony that appellant had not recently exhibited symptoms of psychosis and that "she is actually doing much better except for the memory" establishes that appellant was not exhibiting symptoms or behavior substantially similar to her March 2015 hospitalization. The state, in arguing otherwise, points to the December 2015 incidents in which appellant hit a hospital patient with a coat and hit a staff member in the stomach. The state also points to McCullars's testimony that appellant "would strike out at staff and peers" and "throw chairs and threaten" as well as to the evidence that appellant showed increased psychotic symptoms following her ankle injury.

We first note that, although there was sufficient evidence in the record to indicate two or more placements within the three years prior to the recommitment hearing, the record includes information about appellant's symptoms or behaviors that preceded or led to hospitalization only with respect to appellant's March 2015 hospitalization. Thus, although there was more than one placement under the terms of the relevant statutes and our case law, for the purpose of satisfying sub-subparagraph (iii), we reference

appellant's OSH hospitalization that began in March 2015 that followed the incident during appellant's trial visit in which she had "become aggressive, tried to attack staff, and tried to break down the windows" of the office to which facility staff had retreated in response to appellant's violent behavior. Accordingly, for appellant to have satisfied sub-subparagraph (iii), we must determine whether the record is legally sufficient to show that, at the time of the recommitment hearing, she was exhibiting symptoms or behaviors substantially similar to the violent behavior at the inpatient facility in March 2015 that preceded and led to her OSH hospitalization. We conclude that the record is not sufficient to show such recent violent behavior.

To begin with, after the incident on December 22, 2015, the record indicates that appellant had not exhibited any behavior or symptoms that were substantially similar to the behavior that she had exhibited in March 2015. ORS 426.005(1)(f)(C)(iii) requires that the person alleged to satisfy the expanded criteria *"is* exhibiting symptoms or behavior substantially similar to those that preceded and led to" a placement set out in sub-subparagraph (ii). (Emphasis added.) The word "is" suggests some close proximity of time[3]—but in this circumstance, for the following reasons, we conclude that the record does not support a determination that the behavior exhibited by appellant in December 2015 was recent enough to satisfy the criterion set out in sub-subparagraph (iii).

*First*, it is significant that appellant's interdisciplinary treatment team put appellant, two months after the physically aggressive incidents in December 2015, on "ready to place" status in February 2016. We can infer from the status change that appellant's behavior during those incidents was not recent enough for her doctors to warrant a decision that she must continue hospitalization. Further, the reason appellant's "ready to place" status was revoked was not because of appellant's violent or physically aggressive

---

[3] In *State v. Belli*, 120 Or App 94, 97, 852 P2d 238 (1993), on *de novo* review, we determined that an investigator's description of appellant's "recent" behavior as being much like her behavior preceding three prior commitments satisfied the third expanded criterion. However, we did not publish the circumstances of those behaviors or symptoms or when they occurred.

behavior, but because she had shown some increased symptoms of psychosis related to her ankle injury. The record, however, does not indicate that her psychotic symptoms preceded and led to her rehospitalization in March 2015. That is, of appellant's symptoms or behavior identified by McCullars (distorted perceptions, memory difficulties, opiate dependency, mood swings, and violent behavior) it was appellant's violent behavior identified by McCullars as having led to her hospitalization at OSH.

*Second*, the trial court found that appellant was not dangerous to others because it "did not find that the striking of individuals, both a person and a staff member in December [presents]a risk of current danger to others." We recognize that the analysis for dangerousness is different from the one here. "[To] permit commitment on the basis that a person is dangerous to others, the state must establish 'that actual future violence is highly likely.'" *State v. S. R. J.*, 281 Or App 741, 749, 386 P3d 99 (2016) (quoting *M. A.*, 276 Or App at 629). Unlike the dangerousness analysis, which is a probability assessment, the question here simply asks whether there are contemporaneous symptoms or behaviors that are substantially similar to those that led to or preceded a prior hospitalization. Any probability assessment for the expanded criteria takes place in subsubparagraph (iv), which provides that, "unless treated, [the person] will continue, to a reasonable medical probability, to physically or mentally deteriorate so that the person will become a person described under either subparagraph (A) or (B) of this paragraph or both." ORS 426.005(1)(f)(C)(iv). Nevertheless, the court's finding that appellant's previous dangerousness toward others was insufficient to justify that she was *currently* dangerous would be difficult to reconcile with a conclusion that the record was sufficient to find that appellant's violent behavior was recent under subsubparagraph (iii).

Those two points—appellant's doctors' determination, after her violent episodes and before her recommitment hearing, that she was eligible for discharge, and the trial court's finding that appellant's prior violent behavior did not make future violence toward others likely enough

to conclude she was a danger to others—lead us to conclude that, on this record, the evidence was legally insufficient to show that appellant, at the time of her recommitment hearing "is exhibiting symptoms or behavior substantially similar to those that preceded and led to" a prior hospitalization as required by ORS 426.005(1)(f)(C)(iii) and, therefore, is dispositive of whether she was a person with mental illness within the meaning of ORS 426.005(1)(f)(C). We do not mean to say that exhibiting behavior or symptoms four months before a hearing does not qualify *per se* as recent for purposes of ORS 426.005(1)(f)(C)(iii). Rather, such a determination depends on the particular circumstances of an appellant's condition and the symptoms or behaviors of the appellant. In these circumstances, appellant's behavior was not recent enough to find that she satisfied the expanded criteria. Accordingly, we reverse the recommitment order.

Reversed.